State v. Starnes

---

STATE OF NORTH CAROLINA v. FRANK STARNES

No. 7211SC716

(Filed 25 October 1972)

1. **Criminal Law § 50; Homicide § 15— nonexpert witness — opinion as to cause of death admissible**

   An opinion given by the officer who investigated the shooting as to cause of death of the victim was properly admitted in a second degree murder trial where the gunshot wounds as described by the officer were of such a character that any person of ordinary intelligence would know that they caused the death.

2. **Homicide § 28— second degree murder — right of defendant to protect home — instructions proper**

   In a prosecution for second degree murder the trial court's failure to instruct the jury on defendant's "right to protect his home" did not constitute error where no such issue arose on the evidence.

APPEAL by defendant from *Martin (Robert M.), Judge,* June 1972 Criminal Session of Superior Court held in JOHNSTON County.

Defendant was indicted for the first-degree murder of Larry Darrell Bryant. The solicitor announced that the State would not prosecute defendant for first-degree murder but only for second-degree murder or manslaughter as the evidence might justify. Defendant pleaded not guilty. The State's evidence in substance showed the following: In May 1971 defendant lived as a boarder in the home of one Naomi Battle, renting one of the bedrooms in her four bedroom house. His landlady's 16-year-old daughter, Emma Frances Battle, also resided in the house. About 3:00 a.m. on 30 May 1971, Emma Frances and her boyfriend, 19-year-old Larry Bryant, were in the kitchen of her mother's home where, with her mother's permission, they were preparing to cook pork chops. Defendant, standing outside of the house, fired a shotgun through the kitchen window, striking Larry Bryant in the face and neck. Larry ran to Emma Frances's bedroom, where he fell face down on the floor, bleeding. A second shotgun blast came through the bedroom window, striking the bedpost and the side of the door. Naomi and Emma Frances Battle ran out on the front porch and observed defendant with his gun, standing in the path beside the house. Defendant said, "There is one more I am going to get." After making that statement, defendant ran away.

The deputy sheriff who investigated the shooting and who arrived at the Battle residence at approximately 3:45 a.m. on 30 May 1971, testified:

"I saw Larry Bryant. Upon entering the house at Naomi Battle's residence, I went in the front bedroom of the house which is in the north part of the house. The deceased, Larry Bryant, was lying face down on the floor beside the bed. Upon examining Larry Bryant I saw he had what appeared to be a gunshot wound in the left portion of his neck and there was a large amount of blood under the deceased on the floor. The gunshot wound was right in the middle of his neck, about one and one-half inch deep was cut out of his neck. The left side of his neck. About three inches long and about one and one-half inch deep, just gashed right out.

". . . I contacted Larry Bryant's parents and ascertained from them which funeral home they wanted to get the deceased."

Defendant was arrested by an S.B.I. agent in Monroe, N. C., on 2 March 1972. After being warned of his rights, defendant admitted that while standing outside the house he had fired the shots into the house but "didn't really know whether he shot Larry," that he had overheard Emma and Larry talking in the kitchen and "thought they were trying to get him," and "since they were going to get him he should get them first."

After the State rested its case, defendant testified in substance as follows:

He had had some difficulty with Larry Bryant regarding money which Larry had gotten from him. Earlier on the night of the shooting Naomi Battle had received a head injury for which she had been treated at the hospital. Defendant had been told that "somebody had knocked Naomi in the head." When defendant got to the Battle house and while he was on the porch, he heard Emma Frances say, "You ought not to hit house and heard Emma Frances say, "You ought not to hit mother so hard." Defendant testified: "I didn't know what they were up to so I figured I was going to shoot and maybe they would get out and wouldn't kill me. . . . I shot into the house because I was afraid of him. He had my money from me. He wanted to kill me to keep from paying me my money. I didn't shoot at anybody. I didn't see anybody. I wanted to go in the house but I didn't know if they would knock me in the head when I went in the house."

The jury found defendant guilty of second-degree murder, and from judgment imposing a prison sentence, defendant appealed.

*Attorney General Robert Morgan by Assistant Attorney General I. Beverly Lake, Jr., for the State.*

*Robert A. Spence for defendant appellant.*

PARKER, Judge.

Evidence concerning defendant's in-custody statements to the officers was admitted only after the trial court, on the basis of evidence presented at a *voir dire* examination, had deter-

mined that defendant's statements had been freely and voluntarily made after defendant had been fully advised of his constitutional rights. The evidence presented at the *voir dire* examination fully supports the trial court's findings and determination, and on this appeal the appellant does not further contest the admissibility of his in-custody statements.

[1] The deputy sheriff who investigated the shooting was permitted to testify, over defendant's objections, that in his opinion the victim's death was caused by the gunshot wound in his neck. Appellant assigns this ruling as prejudicial error. In this contention we find no merit. Before expressing this opinion, the witness had described to the jury in some detail the position in which he had found the deceased's body and the nature and extent of the wound which he observed in the deceased's neck. It did not require a medical expert to conclude that the wounds described had caused the death. Any intelligent person who examined the body could have testified to that fact. "In any event, where the injuries are of such a character that any person of ordinary intelligence would know that they caused the death, the witness' expressed opinion cannot be held for prejudicial error." *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495.

[2] We also find appellant's remaining assignments of error without merit. Defendant's motions for nonsuit were properly overruled as there was ample evidence to require submission of the case to the jury, and his contention that the court erred in failing to instruct the jury on his "right to protect his home" is without merit as no such issue arose on the evidence. The court's charge to the jury considered in its entirety was free from prejudicial error. In defendant's trial and in the judgment appealed from we find

No error.

Judges CAMPBELL and MORRIS concur.